Hey, do you call that opening brief with Baker being over here? Um, no. You got an exception? Yeah, it's still on there.  Look at it, man. Please rise. The Honorable Billions of the United States Court of Appeals for the Third Circuit. Oyez, oyez, all persons having business with the Honorable United States Court of Appeals for the Third Circuit are admonished to draw near to their extension. This point is now in session. God save the United States and His Honorable Court. Good morning. We have two cases for oral argument this morning. First is number 15-2859, United States v. One Palmetto State Armory et al. And I have Mr. Stamboli. Stamboli, Your Honor. Stamboli and Mr. Demeroff. Whenever you're ready. Thank you, Your Honor. May it please the Court. My name is Stephen Stamboli. I'm here on behalf of Mr. Watson. Do you wish to reserve any time for rebuttal? I'm sorry, sir. Three minutes. That's fine. No problem. I'd like to also point out my co-counsel Allen Beck is here, and Mr. Heller, whose Heller Foundation filed an amicus brief in the case, is also present in the courtroom today. Welcome. Thank you, Your Honor. As an initial matter, we have not appealed the National Firearms Act challenge that was dismissed in the lower court. We have chosen not to appeal that. And so, in our opinion, the standing issue that was raised in the defendant's brief no longer applies. As if this Court were to say the Second Amendment protects the machine gun, as long as it's registered with the National Firearms Act, Pennsylvania would have no issue with that because there's a safe harbor under Pennsylvania law as long as the machine gun is registered with the National Firearms Act. What remedy could we give Mr. Watson of the trust that would prevent him, in reality, from being prosecuted under the Pennsylvania law? The remedy would be that if the machine gun is registered with the National Firearms Act, which Mr. Watson's machine gun was registered with the National Firearms Act, the remedy is simple. Pennsylvania doesn't care because there's a safe harbor under Pennsylvania law that says as long as the firearm, and that's how it's defined under the National Firearms Act, but it is a machine gun, is registered, Pennsylvania would not. But that's registered through the ATF, right? That is correct, Your Honor. And the ATF rescinded that? They did rescind it, Your Honor. And they said they made a mistake? That's what they said. Yes, sir. So if they made a mistake and they rescinded it and they've now corrected it, so how does that affect your argument? The problem with the ATF's alleged mistake is that we believe that they've done it in the past, and we don't have the evidence to prove that except for one form that was not put in front of this court because we did not put it in front of the lower court, where the ATF has approved a Form 1 to manufacture a machine gun after May 19, 1986. So the ATF, we posit, has a clause under 18 U.S.C. 922.0, which allows a transfer, and I don't have the section here, but it says under the authority of. So a transfer can be effected under the authority of the ATF, which in this case they approved the form, and if you want to read a very liberal construction into it, under the authority of could simply mean the ATF approved it. Do I understand your argument correctly that if we were to hold that 922.0 was unconstitutional, that would then remove the exception that would otherwise apply to the validity of your NFA registration? That is, that's how you would then have relief so you would still have standing, given the Pennsylvania statute? I think I understand correctly. If I could just rephrase what I'm saying, maybe it would make it clearer. If this court were to strike down the ban on post-May 19, 1986 machine guns, that's the law over here. The law over here under the National Firearms Act is still standing. Mr. Watson would still have to pay the $200 tax, go through a six- to eight-month wait, be fingerprinted, photographed, background checked. The ATF would still approve it, but we don't have this statute over here that says, well, it was made after May 19, 1986, therefore it's illegal. But a gun made on May 18, 1986 is legal. You assert that you are making both a facial and as-applied challenge. Correct. But I don't see where in your briefing, maybe you could point it out, you're actually arguing that the statute is unconstitutional otherwise than as written, that is, as a facial challenge. How are you making it an as-applied challenge, that is, it is constitutional as written, but not as applied to your client? We raised both a facial and as-applied challenge in the lower court, and the lower court found that it was probably not as good a job as we could have done raising the as-applied challenge. But he looked at it both as an as-applied and a facial challenge, and we did not address, if I recall correctly, in the briefing whether or not it was as-applied or a facial challenge because the lower court addressed it in both ways. So can you articulate for our purposes what your as-applied argument is? Well, in the context of 922-0, the government's reasoning for wanting to ban machine guns is that they're essentially guns for criminals only, that they protect racketeers, traffickers, and they have no utilization for self-defense, no utility for self-defense. Well, Mr. Watson, who is actually in the courtroom right there, is a practicing attorney in the Commonwealth of Pennsylvania in the state of New Jersey. There's been no evidence, no claim that he would be dangerous with a machine gun. He's obviously not in the trade of drugs because he's a practicing attorney. And then further, Mr. Watson has had his machine gun after the ATF approved the making of it, and he made it. There was no public safety issue. He didn't go out and rob anyone. He didn't kill anyone. The machine gun didn't up and explode. No one was injured. And I think that severely undercuts the government's argument with respect to Mr. Watson only, that he's not a criminal. The criminal statutes typically are designed to prevent certain behavior. If he was transporting drugs or trafficking in firearms or something like that, I can understand the court's point, but he's not. And as applied, 922-0 prohibits Mr. Watson from exercising a Second Amendment right. But isn't that because it's a categorical ban? It's a strange categorical ban in that it's a categorical ban on any machine gun made after May 19, 1986. Machine guns made and lawfully possessed prior to May 19, 1986 are freely transferable. And I say freely. You still have to go through the ATF, fill out a number of paperwork forms, fingerprints, photographs, and things like that. But the government's public safety argument, which is really the only argument that they've raised addressing machine guns, is undercut by the number of machine guns that are currently lawfully owned by civilians. And the only purpose you can own a machine gun for is a lawful purpose. If you fill out a Form 1 and put, I intend to go rob a bank or I'm intending to traffic in drugs, they're obviously not going to approve it. So that leaves us with a proposition that only those 175 plus thousand machine guns that we submitted that 28-J letter of authority on are lawfully owned by law-abiding citizens for lawful purposes. I'm still not sure I understand how when what you're asking us to overturn is a categorical ban, albeit post-1986, that we're dealing with anything other than a facial challenge. I'm not sure I understand the court's question. In fact, instead of making it an as-applied challenge, aren't you really making it a facial challenge? I understand. We've made both, Your Honor. And the facial challenge obviously is a much more difficult monument to climb because we have to prove a number of things and it's unconstitutional for anybody. But that's why we also style it as an as-applied challenge in the lower court because specifically with Mr. Watson, 922-0 bans an arm that is protected under the Second Amendment. And I don't know if that answered the court's question. I hope it did. Well, if we get to the Second Amendment, I mean, every federal court, every judge that's looked at this has considered the argument and found that machine guns are not protected by the Second Amendment. They rejected it. So what did they miss? Thank you, Your Honor. They missed the entire dangerous and unusual language. The courts that have addressed machine guns and whether or not they're protected by the Second Amendment say machine guns are dangerous and unusual. And then we ask, well, what does dangerous and unusual mean? Well, why are machine guns neither dangerous nor unusual? Let's start with unusual. Aren't they different than most other firearms? Well, machine guns are functionally different from a semi-automatic. Like if we take the M16 and the AR-15, the M16 is a standard-issue military rifle and the AR-15 is a civilian version of the standard M16, which is a semi-automatic version. They're functionally different because the AR-15 only shoots one round per trigger pull. The M16 can either do one, three, or multiple rounds. So going back to the court's question on dangerous and unusual, if we look at the Saitano case that just came out, Saitano v. Massachusetts from the Supreme Court, it talks about dangerous and unusual being a conjunctive test rather than being, if we look at it, if it's dangerous or if we look at it as unusual. Obviously, firearms are dangerous weapons. I mean, they're designed to kill for sporting and for a number of other things, but they're dangerous, and I don't think anyone could really say that they're not. Then we get to the unusual part. Well, what does unusual mean? Without being both dangerous and unusual, it opens them up to Second Amendment protection. And we submit that if you look at the cases that Teller cited to for the dangerous and unusual proposition, it's more of a time, place, and manner restriction. I think it was Judge Scalia that said carrying a head axe could be considered dangerous and unusual because it's a weapon that was carried to frighten people. Well, Mr. Hollis isn't asking this court to say, go forth and carry your machine gun down over to Penn's Landing or anything like that. We're asking the court to say, Mr. Watson has a fundamental right to own it, not necessarily to keep and carry it. And that's the difference here is that we're not looking for this court to say, go ahead, carry it down the street and inspire terror in everybody. But when you say unusual, I mean machine guns of the firearms that we have in this country, machine guns are less than half of one percent, right? The facts that we have or the facts that the ATF has come up with Roughly 176,000 out of 357 million. Plus the number of sales samples, which could also be owned by civilians as well. And so that would bring it up to about 197, give or take. And they were even unsure of the answer, and they gave in that FOIA that we submitted. So it's still less than two-thirds of one percent. Okay, but if we look at the Saitano opinion, which said that stun guns are, there's 200,000 or an average 200,000 stun guns owned by individuals in 2009. And then the court, Justice Alito said, you know, they're commonly used. 200,000 is commonly used. So that destroys the government's argument with respect to, well, machine guns are in common usage. Even if we thought there was ambiguity after the Supreme Court's description of machine guns in cases like Haines and O'Brien and Staples and Heller, don't you have another problem in that we have already, and Marzarella said very clearly, that machine guns are outside the scope of the Second Amendment. So are you actually asking our panel to overturn, which we as a panel obviously can't, Marzarella, or asking this court to take up the issue on Bonk to overturn Marzarella? I see I'm out of time. Would you like me to address the court's question? Go ahead. Thank you, Your Honors. With regard to the court's question, Marzarella was not a case about machine guns. And there are comments about machine guns post the Heller decision. However, I think to answer the court's question, obviously we're not asking the panel to overturn another panel's decision. But depending on how it rules, we would ask the court to go on Bonk and address the dangerous and unusual language that hopefully this court provides us. If I may, if you're asking about on Bonk consideration, we have criteria for that in Rule 35 of the Federal Rules of Appellate Procedure. And those include that either it's contrary to our own precedent or Supreme Court precedent, or that it's of exceptional importance, for example, that there are other authoritative decisions of other courts of appeals. Going back to Judge Ambrose's question, is there any authority, whether Supreme Court or any other court of appeals, that has held that machine guns fall within the scope of the Second Amendment? Is there even a circuit conflict here? No, Your Honor, there's not. However, if we look back to the text of Heller, that the Second Amendment extends prima facie to all bearable arms. M16 is a bearable arm, and the Supreme Court has said the Second Amendment extends to all bearable arms. And we would submit that that's enough to get at Second Amendment protection. All right. Why don't we hear from Mr. Nemeroff, and we'll get you back to rebuttal. Thank you, Your Honors. May it please the Court. Patrick Nemeroff on behalf of the government. I think as the discussion just now made clear, the Supreme Court in Heller made very clear the machine guns are not subject to Second Amendment protection. This Court in Mozzarella recognized that, and every other court of appeal has reached the same conclusion. My opposing counsel really doesn't confront Mozzarella at all in his briefs, and I don't think there's any way out from under that decision. And, of course, all the courts of appeals have reached that conclusion for good reason. Now, there was some question regarding standing. Let me ask you about that, because if we do reach the question of the level of scrutiny, you're arguing that either under intermediate or even strict scrutiny, that 922-0 would pass muster. But is there a problem there for the government in that the pre-1986 possession of machine guns remains lawful because of the grandfathering in of a significant number of machine guns? Given that recognition, how could a categorical ban on machine guns pass at least strict scrutiny? Well, it's fairly common for Congress to include grandfathering clauses, even when Congress has extremely important interests that it's pursuing, and there are a number of reasons for that. I don't think that Congress permitting these pre-1986 machine guns to remain privately possessed for whatever reason undermines the important interests served by keeping machine guns out of the hands of private individuals. And regardless, so I do think it passes intermediate scrutiny or strict scrutiny, but, of course, this Court really should not get to the means that I'm screening to test, because it is well established, both in this circuit and in the Supreme Court, that machine guns don't fall within the specific limit. Exactly. What happened with the ATF here? Why did they grant Mr. Watson's application before denying it? It was a mistake, Your Honor. It was a clerical error, and I would note that ATF has a new regulation. It's cited in the briefs. It's 81 Federal Register 2658 that should address this issue, and basically previously when legal entities such as trusts applied to register firearms under the National Firearm Act, ATF wasn't getting the information for responsible individuals who would be responsible for the firearms at that legal entity so that it could run a background check. Now it will always get that information, and it will run background checks and, of course, ensure that machine guns are not approved. So before the regulation, was it the position of ATF that someone like a trustee taking possession of a firearm that was registered to the trust, that that was not unlawful under either the DCA or the NFA? No. And the regulation is very clear that it's not that ATF's interpretation of the statutes has changed in any way. Of course the Gun Control Act applies to individuals who, through a trust, seek to possess a firearm. Otherwise, anybody could avoid any part of the Gun Control Act, including felons, for example, by forming a trust. It's just that ATF now is going to ensure that it always gets the necessary information to make sure mistakes like the one in this case don't happen again. Could you address the standing issue? Because you continue to challenge standing, but it appears from your adversary's argument that they would be able to obtain relief, that is, they could still qualify under the NFA and therefore the safety valve for Pennsylvania if 922-0 was held unconstitutional. Isn't that sufficient for standing purposes? I think it is, actually, Your Honor. And our standing argument was premised on our understanding of plaintiff's claim. And I'm not sure that it was made clear, even in the briefs on appeal, this new position, that the plaintiff was only seeking to challenge the Gun Control Act. But our understanding was that what plaintiff sought was an order declaring the National Firearms Act and the Gun Control Act unconstitutional with respect to machine guns. And, of course, if that were to occur, it's at least likely that Pennsylvania law would continue to ban machine guns because plaintiff wouldn't be able to comply with the National Firearms Act. To the extent this Court accepts plaintiff's characterization of his claim now only with respect to the Gun Control Act, then we think there is standing. Thank you. If there are no further questions. Well, I have another question for you, Mr. McAllister, on how we approach the issue of the trust. That is, the arguments that have been raised before us and the way the district court approached this have us wading into the question whether a trust is a legal person or it's a term that describes a legal relationship. Do we even need to get into that issue? And I'd like to ask your colleague on rebuttal as well, why shouldn't we look at this simply as the Gun Control Act imposing a prohibition on natural persons? A trustee may, in addition to being a natural person, be a trustee, but there's no exception for trustees under the Gun Control Act. So if we've got a natural person taking possession of a firearm under 922-0, then we are simply looking at a straight application of the statute because there's no trustee exception. Why shouldn't we look at it that way as opposed to considering the legal status of a trust? I think your Honor is absolutely correct that that's the right way to look at it. The district court did look at state law issues about the legal status of a trust, and I think that helps inform the interpretation, but it's not necessary at all because you're right. Even if a firearm is held by a trust, it's also going to be held by a natural person at the same time, and that's once again what ATF's new regulation underscores, which is that there's always going to be a responsible person at that trust who has the ability to dispose or to control over the firearm, and that person is going to be subject to the Gun Control Act. And that's true, of course, whether it's a trust or a corporation or any other legal entity. The natural individuals who are responsible for the firearm are still subject to the prohibitions in the Gun Control Act. Given that there was a mistake here, is there some other way for Mr. Watson to have relief, at least for the costs, the investment that he made in manufacturing this based on his reliance on the ATF's approval, through the forfeiture proceeding perhaps, or is there any other mechanism? I'm not aware of one, Your Honor. I would note that plaintiff did raise a district court claim for detrimental reliance, which he hasn't raised on appeal, and in any event, that claim would fail because there's quite a high standard for the type of misconduct by the government in order to make out that sort of claim. So I'm just not sure. The plaintiff hasn't raised a claim that we think is viable at this point. What is the status of the forfeiture proceeding? It is held by the district court pending this appeal, and I think all the parties agree that if the district court's judgment here is affirmed, the forfeiture action will be resolved immediately, and the government will prevail on that case as well. Thank you very much. Thank you. Mr. Stempley. Would you like me to address the issue relating to the trust? Yes. Could a convicted felon act as a trustee and apply to manufacture a machine gun on behalf of the trust? There is a, I believe it's a Seventh Circuit opinion that talks about felony trusteeship and that the felon could be a trustee of the trust as long as he did not possess, like physically possess the item in the trust because he was a felon and thus dispossessed of his firearm rights. It is noted in the Federal Register that Mr. Nemeroff cited to earlier, but I don't have the case citation in front of me right now. But doesn't that approach just reinforce the idea that the federal courts look at the application of 922-0 as to the natural person in the first instance? That is, the felony would be disqualifying. There's not a blanket exemption for trustees. I think that Your Honor is correct that there's not a blanket exception, but we have to look at what the text of 18 U.S.C. 922-0 says and what the definition of person is under 18 U.S.C. 922-0, and nowhere does trust become a person under 922-0. A trust is defined as a person under the National Firearms Act, but nothing under the Gun Control Act. But we're really looking at Mr. Watson or a comparable trustee taking possession of the firearm, right? Correct. And isn't 922-0 clearer as to its application to natural persons, even if the trust itself is not listed in the definition of those covered? I think the Court's correct in that question, and the only thing I can point out in being different is when we have a criminal application of a felon in possession and when we have Mr. Watson who's not dispossessed from owning a firearm. If I could, I'd just briefly address the NFA challenge. It's clearly not briefed in the brief, as is the detrimental reliance claim, so it's not a surprise to the appellees that we're not raising the NFA challenge at this portion, at this point. And I'd also like to leave the Court with the number of machine guns that are in private hands. Obviously, there's a lot of gun crime in this country. We read about it every day. What we don't read about are machine gun crimes, and if someone is going to go out and murder a bunch of people, they don't use machine guns. They use handguns, which the Heller Court specifically upheld. Or they overturn the ban in D.C. Handguns in the home. Handguns in the home, that's correct. And we're not asking, as I said earlier, for Mr. Watson to go carry a machine gun around everywhere, but he has a right to it in his home. It's no different when we talk about handguns, which are obviously way more concealable and inflict 80% or more of the murders in this country where machine guns don't. Or if they do, there's been no evidence of it in the lower court. The government's provided nothing, so no further questions. Thank you very much. Thank you very much. Thank you to both counsel for well-presented arguments.